# In re Carlos VASQUEZ-MUNIZ, Respondent

File A36 621 740 - Eloy

*Decided January 15, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)   An offense defined by state or foreign law may be classified as an aggravated felony as an offense "described in" a federal statute enumerated in section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. V 1999), even if it lacks the jurisdictional element of the federal statute.

(2)   Possession of a firearm by a felon in violation of section 12021(a)(1) of the California Penal Code is an aggravated felony under section 101(a)(43)(E)(ii) of the Act because it is "described in" 18 U.S.C. § 922(g)(1) (1994). *Matter of Vasquez-Muniz*, Interim Decision 3440 (BIA 2000), overruled.

Pro se

FOR THE IMMIGRATION AND NATURALIZATION SERVICE:  Wendell A. Hollis, Deputy District Counsel

BEFORE:  Board En Banc:  SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; SCHMIDT, HURWITZ, VILLAGELIU, FILPPU, COLE, GUENDELSBERGER, GRANT, MOSCATO, OHLSON, HESS, and PAULEY, Board Members.  Concurring Opinion: HOLMES, Board Member.  Concurring and Dissenting Opinion: ROSENBERG, Board Member, joined by MILLER, BRENNAN, ESPENOZA, and OSUNA, Board Members.

SCIALABBA, Acting Chairman:

This matter first came before us on December 1, 2000, when we issued a published precedent, *Matter of Vasquez-Muniz*, Interim Decision 3440 (BIA 2000), holding that the respondent's conviction for possession of a firearm by a felon did not constitute a conviction for an aggravated felony within the meaning of section 101(a)(43) of Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. V 1999).

Subsequent to our precedent decision, the United States Court of Appeals for the Ninth Circuit, within whose jurisdiction this case arose, concluded that felony possession of a firearm in violation of section 12021(a) of the California Penal Code constitutes an aggravated felony "'as an offense described in' 18 U.S.C. § 922(g)(1)," the federal statute criminalizing possession of a firearm by a felon. *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025 (9th Cir.) (quoting section 101(a)(43)(E) of the Act),

*cert. denied*, 122 S. Ct. 294 (2001). On April 27, 2001, nearly 5 months after our original decision in the case, the Immigration and Naturalization Service filed a motion to reconsider our original decision, arguing, among more substantive points, that the Service is not bound by regulations imposing a 30-day deadline on motions to reconsider in removal proceedings. 8 C.F.R. § 3.2(b)(2) (2001).

We need not address the Service's arguments concerning the timeliness of its motion. Instead, in view of the importance of the matter and the inconsistency between our prior decision and that of the Ninth Circuit, and upon a close examination of the statute, we find it appropriate to reconsider the matter upon our own motion, pursuant to 8 C.F.R. § 3.2(a).

Upon reconsideration, our prior decision in this matter will be vacated, the Service's appeal will be sustained, and the respondent will be ordered removed from the United States.

## I. ISSUE PRESENTED

The issue before us is whether possession of a firearm by a felon in violation of section 12021(a)(1) of the California Penal Code is a crime "described in" section 101(a)(43)(E)(ii) of the Act, and is therefore an aggravated felony.[1]

## II. FACTS

The respondent was admitted to the United States as a lawful permanent resident in 1978. In 1991, when he was 18 years old, he was convicted of robbery in California and was sentenced to 180 days in jail and 36 months of probation. On June 4, 1996, the respondent was convicted in the Superior Court of California for the County of Los Angeles of "possession of a firearm by a felon—one prior" in violation of section 12021(a)(1) of the California Penal Code. The respondent was sentenced to 32 months in prison as a result of this conviction.

On August 11, 1999, the Service issued a Notice to Appear (Form I-862) and instituted removal proceedings against the respondent. Initially, he was charged under section 237(a)(2)(C) of the Act, 8 U.S.C. § 1227(a)(2)(C)

---

[1] Section 101(a)(43)(E)(ii) of the Act includes within the definition of an "aggravated felony" an offense described in—

. . .

(ii) section 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of title 18, United States Code (relating to firearms offenses) . . . .

(Supp. V 1999), as an alien convicted of a firearms offense. Subsequently, the Service lodged a charge under section 237(a)(2)(A)(iii) of the Act, alleging that the respondent was convicted of an aggravated felony as defined in section 101(a)(43)(E)(ii) of the Act.

The respondent admitted the facts alleged in the Notice to Appear and conceded that he was removable under section 237(a)(2)(C) of the Act as a result of his conviction for a firearms offense, but he contested removability on the aggravated felony charge. The Immigration Judge asked the Service attorney to identify which of the offenses referenced in section 101(a)(43)(E)(ii) was the basis for the aggravated felony charge. The Service attorney stated that it was 18 U.S.C. § 922(g)(1) (1994).

## III. IMMIGRATION JUDGE'S DECISION

The Immigration Judge found that the respondent was subject to removal under section 237(a)(2)(C) of the Act, as an alien convicted of a firearms offense, but not under section 237(a)(2)(A)(iii) of the Act, as an alien convicted of an aggravated felony.

The Immigration Judge found that the respondent's state crime was not an aggravated felony because it was not "described in" the federal statute referenced in the aggravated felony provision, as required. *See* section 101(a)(43)(E) of the Act. He reached this conclusion because the federal offense of possession of a firearm by a felon contains an "interstate commerce" element, whereas the respondent's state offense did not. The Immigration Judge concluded that the respondent was not ineligible to apply for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (Supp. V 1999), and he allowed the respondent to fully present his application for relief from removal. He ultimately granted this relief as a matter of discretion and terminated removal proceedings. The Service appealed. Rejecting an argument put forward by the Service, a majority of this Board upheld the Immigration Judge's decision in our prior published order. We now reconsider that decision.

## IV. ANALYSIS

### A. Comparison of State and Federal Felony Possession of a Firearm Offenses

To determine whether, on its face, the respondent's state offense of felony possession of a firearm is a crime "described in" the aggravated felony provision at section 101(a)(43)(E) of the Act, we compare the state crime the respondent committed with the federal crime described in the aggravated

felony provision. If the respondent's state crime is "described in" the federal statute, then the respondent's crime is an aggravated felony.

Section 12021(a)(1) of the California Penal Code provides, in relevant part:

> Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 12001.6, . . . who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

Cal. Penal Code § 12021(a)(1) (West 1996). The federal statute at 18 U.S.C. § 922(g)(1) provides, in relevant part:

> It shall be unlawful for any person—
>    (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>    . . .
>    to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The elements of the state and federal crimes are substantially the same: knowing possession of a firearm by a person who has been convicted of a felony. *Compare People v. Jeffers*, 49 Cal. Rptr. 2d 86, 89 (Cal. Ct. App. 1996) (setting forth the elements of the state crime), *with United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997) (setting forth the elements of the federal crime). The state statute, however, lacks the third element of the federal crime, "affecting interstate or foreign commerce." This third element, as acknowledged in our prior order in this matter, is often referred to as the "jurisdictional element," which brings the criminal provision within federal legislative power under the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 3; *see also United States v. Lopez*, 514 U.S. 549, 561 (1995); *United States v. Bass*, 404 U.S. 336 (1971).

In view of the above, the key to the meaning of the Act is to determine whether section 101(a)(43)(E) encompasses a state crime having no federal jurisdictional element, such as the respondent's offense, as a crime "described in" the enumerated federal statutes. If so, the purely "jurisdictional element" of the federal statute loses its significance for determining whether the state crime is an aggravated felony.

For the many reasons that follow, we find that the respondent's state crime is indeed "described in" section 101(a)(43)(E)(ii) of the Act, and is thus an aggravated felony regardless of whether it includes the purely jurisdictional element of "affecting interstate commerce." Our decision in *Matter of Vasquez-Muniz*, *supra*, is therefore overruled.

### B. State Offenses as Aggravated Felonies

When we engage in statutory interpretation, our first and most critical inquiry must be the plain meaning of the statute.  In making this inquiry, it is important that we examine the language in its proper place within the context and design of the statute as a whole.  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *Matter of Alvarado-Alvino*, Interim Decision 3391 (BIA 1999).

The aggravated felony provision appears at section 101(a)(43) of the Act.  We understand this provision to function as an identifier of certain categories of criminal conduct to which the Act attaches negative immigration consequences.  Pursuant to this function, section 101(a)(43)(E)(ii) includes within the definition of an "aggravated felony" an offense described in 18 U.S.C. § 922(g)(1).  The aggravated felony provision enumerates other offenses as well, and in its penultimate sentence states the following:

> The term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.

Section 101(a)(43) of the Act.

This penultimate sentence, governing the enumeration of crimes in section 101(a)(43) of the Act, refers the reader to *all* of the crimes "described in" the aggravated felony provision.  Thus, in effect, the penultimate sentence provides a guide for interpreting the significance of the list of enumerated crimes in subparagraph (E):  namely, the crimes specified are aggravated felonies regardless of whether they fall within the jurisdiction of the federal government, a state, or, in certain cases, a foreign country.  The language clearly reflects a concern over substantive offenses rather than any concern about the jurisdiction in which they are prosecuted.

The language in the statute draws no distinctions among the various subparagraphs of section 101(a)(43) that would enable us to conclude that some describe aggravated felonies, regardless of jurisdiction, but others do not.[2]  Consequently, even before we arrive at the question of precisely what crime is "described in" subparagraph (E), we know that the broader language appearing at the end of section 101(a)(43) clearly applies to it.  If we are to

---

[2]  The only exception is in section 101(a)(43)(P)(i) of the Act, where more specific language requiring a "violation of" 18 U.S.C. § 1543 overrides the general direction of the penultimate sentence of section 101(a)(43) as a whole.  This sole exception does not negate the general rule.

give this language meaning, it must render irrelevant any purely jurisdictional element appearing in the crimes enumerated.

Furthermore, owing to the nature of federal and state jurisdictional requirements, it would be very rare for a state to include federal jurisdictional language within its criminal statutes. Consequently, if state crimes must include a federal jurisdictional element in order to be classified as aggravated felonies, then virtually no state crimes would ever be included in section 101(a)(43)(E), despite the statute's language to the contrary.

Our conclusion in this regard is substantially confirmed by language appearing elsewhere in the Act, referring directly to state convictions under section 101(a)(43)(E). Specifically, section 241(a)(4)(B)(ii) of the Act, 8 U.S.C. § 1231(a)(4)(B)(ii) (Supp. V 1999), authorizes the Attorney General to remove certain criminal aliens before their sentences are complete, but carves out an exception for those aliens who are *confined by a state pursuant to a final conviction for an offense described in section 101(a)(43)(E)*.[3] This reference to state convictions for offenses listed under subparagraph (E) would be superfluous if only federal crimes would ever likely be "described in" that subparagraph.

Thus, the Act, in its overall design, in the language of the aggravated felony provision itself, and in the very specific reference noted above, clearly contemplates that subparagraph (E) of the aggravated felony provision encompasses state crimes.

## C. Foreign Offenses as Aggravated Felonies

Equally revealing about the statutory design is the Act's inclusion of violations of foreign law as aggravated felonies. Most foreign statutes, arising as they generally do under circumstances not akin to our federal system, are extremely unlikely to contain jurisdictional elements similar to

---

[3] Section 241(a)(4)(B) of the Act states, in relevant part:

> The Attorney General is authorized to remove an alien in accordance with applicable procedures under this Act [chapter] before the alien has completed a sentence of imprisonment—
>
> . . .
>
> (ii) in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 101(a)(43)(C) or (E)), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

those appearing in our federal statutes. Yet the statutory directive in the penultimate sentence of section 101(a)(43) requires us to regard certain violations of foreign law as aggravated felonies.

If the decision of the Immigration Judge in this matter were to be followed, the "foreign law" element of the aggravated felony provision would be significantly undercut. A number of grave offenses clearly "described in" the subparagraphs of section 101(a)(43) of the Act would be found to have no foreign counterpart and would not be classified as aggravated felonies despite the statutory direction to so classify them.

For example, we would likely be constrained to find that smuggling aliens through Canada, or issuing ransom demands for hostages in Mexico, or stockpiling explosive materials in France, or even being convicted in a foreign jurisdiction of possession of a firearm by a felon are not aggravated felonies, because, unlike the federal statutes referenced in the Act, these foreign crimes are unlikely to have a federal jurisdictional element. *See* sections 101(a)(43)(C), (D), (E), (H), (N) of the Act.

These consequences would contravene the explicit statutory directive Congress has provided in the penultimate sentence of section 101(a)(43): to identify the specified crimes as aggravated felonies whether in violation of federal or state law, or the law of a foreign country. It would be unreasonable to assume that Congress intended to exclude certain specified crimes from the definition of an aggravated felony simply because they lack a jurisdictional element that would be meaningless to the enacting foreign or state jurisdiction.

We find this review of the statutory language clear and sufficient to conclude that a violation of the California statute at issue here is an aggravated felony under the Act.

## D. *United States v. Castillo-Rivera*

Finally, we observe that in *United States v. Castillo-Rivera*, *supra*, the Ninth Circuit arrived at the same conclusion we reach here for many of the same reasons enunciated above, which were set forth in the dissent from our prior order. To not reach this conclusion, the Ninth Circuit observed, would "undermine the language of the aggravated felony statute and the evident intent of Congress" and would "essentially eliminate the possibility of any analogous state conviction qualifying as an aggravated felony." *Id.* at 1023-24. We concur with the court's assessment.

## V. CONCLUSION

As the foregoing discussion demonstrates, both the language and the design of the Act evince a clear purpose: by virtue of the statutory directive in the penultimate sentence of section 101(a)(43), the aggravated felony provision reflects the intent of Congress to reach certain types of crimes and classify them as aggravated felonies, regardless of which jurisdiction prosecuted the offense.

Upon reconsideration of this matter, therefore, and, in part, to assure uniformity of law nationwide on this important question, we concur with the conclusion of the Ninth Circuit in *United States v. Castillo-Rivera*, *supra*. We hold that the respondent's crime, possession of a firearm by a felon in violation of section 12021(a)(1) of the California Penal Code, is "described in" section 101(a)(43)(E)(ii) of the Act, and is an aggravated felony, regardless of whether it contains the federal jurisdictional element of affecting interstate commerce contained in 18 U.S.C. § 922(g)(1). Consequently, the respondent is removable under section 237(a)(2)(A)(iii) of the Act and is not eligible for cancellation of removal under section 240A(a) of the Act. Accordingly, the Service's appeal will be sustained.

**ORDER:** Upon reconsideration, the appeal of the Immigration and Naturalization Service is sustained, and our prior decision in this matter is vacated.

**FURTHER ORDER:** The decision of the Immigration Judge is vacated, and the respondent shall be removed from the United States.

*CONCURRING OPINION*: David B. Holmes, Board Member

I respectfully concur.[1]

The determinative issue for me remains whether the penultimate sentence of section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. V 1999), should be read in part as "simply another manner of stating that the aggravated felony definition includes any state offense that 'would have been an offense described in . . . this section if a circumstance giving rise to Federal jurisdiction had existed.'" *Matter of Vasquez-Muniz*, Interim Decision 3440, at 11 n.7 (BIA 2000) (quoting 18 U.S.C. § 3142(e)(1)). In reconsidering this question, I am not unaffected by the relative ease with which the United States Court of Appeals for the Ninth Circuit concluded that a prior state conviction for being a felon in possession of a firearm in violation of section 12021(a) of the California

---

[1] I assume the reader's familiarity with previous and present Board opinions in this case.

Penal Code constitutes a conviction for an aggravated felony, as an offense "described in" 18 U.S.C. § 922(g)(1) (1994). *United States v. Castillo-Rivera*, 244 F.3d 1020 (9th Cir.), *cert. denied*, 122 S. Ct. 294 (2001).

I am also persuaded, however, by the present majority's reference to section 241(a)(4)(B)(ii) of the Act, 8 U.S.C. § 1231(a)(4)(B)(ii) (Supp. V 1999), which authorizes the Attorney General to remove certain nonviolent criminal aliens from the United States prior to completion of their sentence of imprisonment, but expressly precludes the removal of an alien in the custody of a state or political subdivision of a state if the alien is confined pursuant to a final conviction for an offense "described in" section 101(a)(43)(E). This provision clearly contemplates that state offenses are included within the offenses "described in" section 101(a)(43)(E) of the Act. I am satisfied that this provision would be left with no meaning unless the penultimate sentence of section 101(a)(43) of the Act is read as another manner of stating that section 101(a)(43) includes offenses described therein by reference to federal criminal law, without regard to the federal jurisdictional element. Accordingly, I concur in the result in this case.

*CONCURRING AND DISSENTING OPINION:* Lory Diana Rosenberg, Board Member, in which Neil P. Miller, Noel Ann Brennan, Cecelia M. Espenoza, and Juan P. Osuna, Board Members, joined

I respectfully concur in part and dissent in part.

A motion to reconsider pursuant to 8 C.F.R. § 3.2(b) (2001) is a "'request that the Board reexamine its decision in light of additional legal arguments, *a change of law*, or perhaps an argument or aspect of the case which was overlooked.'" *Matter of Cerna*, 20 I&N Dec. 399, 402 n.2 (BIA 1991) (emphasis added)(quoting Hurwitz, *Motions Practice Before the Board of Immigration Appeals*, 20 San Diego L. Rev. 79, 90 (1992)), *aff'd*, *Cerna v. INS*, 979 F.2d 212 (11th Cir. 1992); *see also Board of Immigration Appeals Practice Manual*, § 5.7(a), at 70 ("A motion to reconsider . . . *identifies a change in law that affects a prior Board decision* and asks the Board to re-examine its ruling." (emphasis added)). Although a motion to reconsider ordinarily must be filed within 30 days of a final decision by the Board, we may accept and adjudicate an untimely motion sua sponte. 8 C.F.R. § 3.2(a).

The Immigration and Naturalization Service advances its motion to reconsider our precedent decision in *Matter of Vasquez-Muniz*, Interim Decision 3440 (BIA 2000), based on a decision of the United States Court of Appeals for the Ninth Circuit, the jurisdiction in which this case arises. *United States v. Castillo-Rivera*, 244 F.3d 1020 (9th Cir.), *cert. denied*, 122 S. Ct. 294 (2001). The Service also contends that it is not bound by the rules governing motions to reconsider. Like the majority, I would not reach

the issue of untimeliness presented by the Service's untimely motion. I conclude that a change in the law of the circuit in which our precedent arises warrants that we reconsider sua sponte, if necessary, our prior holding. *See Matter of G-D-*, Interim Decision 3418 (BIA 1999). Accordingly, I concur that we should entertain the Service's motion.

In addition, I recognize that we are free to "refine, reformulate, and even reverse [our] precedents in the light of new insights and changed circumstances." *Davila-Bardales v. INS*, 27 F.3d 1, 5 (1st Cir. 1994) (citing *Rust v. Sullivan*, 500 U.S. 173, 186-87 (1991)). However, although I concur with the result reached in this opinion, I disagree with the approach and analysis relied on by the majority. I concur only because this case arises in the jurisdiction of the Ninth Circuit, which has issued a decision that is at odds with our precedent. In light of the Board's prior precedent and ongoing practices, and the facts and circumstances of this case, I would only go so far as to follow the ruling of the Ninth Circuit within the confines of that circuit.

## I. ISSUE

The issue before us is essentially a procedural one: whether the Ninth Circuit's decision in *United States v. Castillo-Rivera*, *supra*, constitutes a change in the law governing the result reached in our prior decision in *Matter of Vasquez-Muniz*, *supra*, and warrants modifying that decision accordingly. Substantively, the underlying issue is whether a state conviction for possession of a firearm is for an offense "described in" 18 U.S.C. § 922(g)(1) (1994), which makes it unlawful for a felon to possess a firearm in or affecting interstate commerce, and thus an aggravated felony under section 101(a)(43)(E)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(E)(ii) (Supp. V 1999).

## II. RECONSIDERATION AND REVISION OF *MATTER OF VASQUEZ-MUNIZ*

In *United States v. Castillo-Rivera*, *supra*, the Ninth Circuit held that possession of a firearm in violation of section 12021(a) of the California Penal Code is an "offense described in" 18 U.S.C. § 922(g)(1), which makes it unlawful for any person convicted of a crime punishable for more than 1 year to "possess in or affecting commerce any firearm or ammunition." *Id.* at 1022, 1023 (holding that "the commerce nexus requirement of § 922(g) 'is merely a jurisdictional basis'"). This ruling is contrary to our prior decision in *Matter of Vasquez-Muniz*, *supra*, in which we held that the lack of an interstate commerce requirement in the California statute sufficiently

distinguished it from the federal law and thus precluded a conviction under California law from being considered a conviction for an aggravated felony offense.

Inasmuch as the Ninth Circuit had not previously ruled on this question, the issuance of the circuit court's decision in *United States v. Castillo-Rivera* constitutes a change of law affecting our decision in *Matter of Vasquez-Muniz*. *See Matter of Cerna*, *supra*, at 402. Moreover, we are obliged to acquiesce to the decisions of federal courts of appeals in cases arising in the jurisdiction of a particular circuit. *Matter of K-S-*, 20 I&N Dec. 715, 719-20 (BIA 1993); *Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989); *see also Singh v. Ilchert*, 63 F.3d 1501, 1508 (9th Cir. 1995) (citing *NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74, 75 (9th Cir. 1987), *cert. denied*, 501 U.S. 1217 (1991)). Therefore, I agree that we must modify our original decision to conform to circuit court law.

However, I do not agree that we must necessarily render a precedent decision applying the Ninth Circuit's interpretation nationwide. And even if it is appropriate to issue a new nationwide precedent, I cannot subscribe to the reasoning adopted by the majority.

First, it has not been our practice to simply follow the decision of one circuit court that has overruled our prior precedent. To the contrary, when such circumstances have arisen recently, we have modified our precedent only as it applies in the circuit that issued the conflicting ruling, simply acquiesced to the circuit holding in unpublished cases, or waited more than 5 years from the time of the circuit court's ruling to modify our precedent for application nationwide. Second, the majority has not offered any compelling reason why we should modify our precedent based on the decision of one circuit court. To the extent that the majority relies on the text of section 101(a)(43) of the Act, I believe it has misread the statutory language and, in any event, I would not find the language in question to resolve the substantive question presented here.

## A. Treatment of Prior Precedent

Three recent cases illustrate our treatment of precedent decisions issued by the Board in relation to contrary rulings from the circuit courts of appeals. Most recently, we issued a precedent decision in *Matter of Olivares*, 23 I&N Dec. 148 (BIA 2001), acknowledging that as a result of a decision of the Fifth Circuit, "a conviction for Texas felony DWI is not classifiable as a crime of violence conviction under 18 U.S.C. § 16(b) for purposes of removability." *Id.* at 150 (citing *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001)). The ruling of the Fifth Circuit conflicted with our precedent decision

in *Matter of Puente*, Interim Decision 3412 (BIA 1999), which involved a conviction under the very same law that was the subject of the Fifth Circuit's decision in *United States v. Chapa-Garza*, *supra*.

In *Matter of Olivares*, *supra*, we held only that "we will not apply our decision in *Matter of Puente*, *supra*, in cases arising within the jurisdiction of the Fifth Circuit." *Id.* at 150. Notably, we did not overrule *Matter of Puente*, and we have continued to apply that decision outside the Fifth Circuit.

Nevertheless, despite this most restrictive of decisions, several Board Members expressed concerns over issuing a precedent decision that would acknowledge the change in Fifth Circuit law. In a concurring opinion in *Matter of Olivares*, *supra*, two of my colleagues cautioned the Board to move slowly and carefully before publishing a decision and overruling controlling precedent. Two other colleagues opposed issuing another precedent in a Texas DWI case without addressing other Board precedent decisions impacted by recent Fifth Circuit decisions. Yet these members have joined the majority decision here, without any explanation why they would have refrained from issuing *Matter of Olivares* as a precedent at all, but have no difficulty with our issuing a precedent of nationwide effect in this case.

Next, in *Matter of Roldan*, Interim Decision 3377 (BIA 1999), we held that an alien whose guilty plea to possession of a controlled substance was vacated and dismissed after probation was considered to have a conviction for immigration purposes. We ruled that the policy exception in our prior decision in *Matter of Manrique*, Interim Decision 3250 (BIA 1995), which accorded federal first offender treatment to certain drug offenders who had received state rehabilitative treatment, had been superseded by the enactment of section 101(a)(48)(A) of the Act, which gives no effect to state rehabilitative provisions. On appeal, the Ninth Circuit granted the respondents' petitions and vacated the order contained in our precedent. *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000) (addressing the cases of both Roldan-Santoyo and another respondent, Lujan-Armendariz).

The Ninth Circuit ruled that addition of the 1996 statutory definition of a "conviction" did not repeal the federal first offender statute, under which expungement of a first-time offense for simple possession does not constitute a conviction, or alter its rule requiring similar treatment for first-time state drug possession offenders. Nevertheless, to date, we have not adopted this rule for application nationwide, nor have we even published a precedent indicating that we would no longer apply *Matter of Roldan* in cases arising in the Ninth Circuit. *Cf. Matter of Olivares*, *supra*.

Finally, in *Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993), the Ninth Circuit reversed our decision in *Matter of Goldeshtein*, 20 I&N Dec. 382 (BIA 1991) (finding that conspiracy to violate United States currency laws relating to structuring financial transactions to avoid currency reports constituted a crime involving moral turpitude). For the following 6 years, we presumably acquiesced to the Ninth Circuit's decision in unpublished decisions, but applied our precedent to the contrary in all appeals arising in circuits other than the Ninth Circuit. No other circuit courts spoke to the issue, and it took us almost 7 years to acknowledge the Ninth Circuit's decision and modify our precedent for application nationwide. *See Matter of L-V-C-,* Interim Decision 3382 (BIA 1999). In the meantime, noncitizens charged with having been convicted of a crime involving moral turpitude of the type addressed in *Matter of Goldeshtein*, *supra*, in jurisdictions outside the Ninth Circuit continued to be subject to deportation and removal.

In none of these three cases favoring the position urged by the noncitizen respondents, did we act immediately to issue a new precedent with nationwide effect following issuance of a circuit court decision contradicting the reasoning in our existing precedent. Instead, at best, we have issued a precedent limited to the circuit in which the circuit court's reasoning contradicted that in our existing precedent. *Matter of Olivares*, *supra*. At worst, we have failed to acknowledge the circuit court decision and have not acted to modify our precedent. Specifically, in *Matter of Roldan*, we have allowed a precedent decision that is at odds with circuit court law to remain in effect without some modification for nearly 2 years.

The majority has not distinguished these cases and has offered no reason why we should act differently here. By contrast, based on the ruling of one circuit court, the majority now modifies our precedent to hold that any noncitizen convicted of possession of a firearm after a prior felony has been convicted of an aggravated felony.

## B. Examination of Statutory Language

The majority appears to have rejected our decision in *Matter of Vasquez-Muniz*, *supra*, in its entirety. I would not do so, and cannot agree with the majority, as it has not proposed any reason for us to do so that I find persuasive.

The Service previously had the opportunity to raise its arguments, and those arguments were considered and ruled on in our original decision. A motion to reopen or to reconsider does not amount to an adjudication of the issues anew, but "asserts that at the time of the Board's previous decision, an error was made." *Matter of Lopez*, Interim Decision 3343, at 2 (BIA 1998).

In our prior decision in *Matter of Vasquez-Muniz*, *supra*, we reached our determination whether a particular crime was an aggravated felony under section 101(a)(43) by looking to the elements of the offense.  I would not change that approach and, in fact, the majority does not suggest that we do so here.

In particular, in our prior decision in *Matter of Vasquez-Muniz*, *supra*, we found that the word "describe" is defined as "'To narrate, express, explain, set forth, relate, recount, narrate, depict, delineate, portray [or] sketch.' *Black's Law Dictionary* 445 (6th ed. 1990)." *Id*. at 7.  Looking at the entire statutory section, we concluded that we could find no instance in which the term was used simply to mean that which is "'analogous or similar in nature to that which is being compared.'" *Id*. at 8 (quoting the definition proferred by the Service).  We concluded that each usage of the phrase "described in" in the relevant statutory and regulatory provisions reflects a more specific meaning than something merely "similar to" that which is referenced; rather, in each instance, the phrase "described in" clearly refers to something specifically set forth elsewhere in the statute or regulation. *See id.* at 7-8 (citing, e.g., sections 101(b)(1)(E)(ii), (f)(3), 204(a)(1)(A), (B), 210(b)(7)(B), 216(c)(1)(A), 236(c)(2), 245(c), (e)(1) of the Act, 8 U.S.C. §§ 1101(b)(1)(E)(ii), (f)(3), 1154(a)(1)(A), (B), 1160(b)(7)(B), 1186a(c)(1)(A), 1226(c)(2), 1255(c), (e)(1) (1994 & Supp. IV 1998); 8 C.F.R. §§ 1.1(t), 204.6(j)(3)(ii), 236.1(c)(8), 240.26(b)(1)(i)(E) (2000)).

Furthermore, in our original decision in *Matter of Vasquez-Muniz*, *supra*, we rejected the Service's argument that section 101(a)(43) of the Act would be rendered meaningless unless we accepted that every one of its provisions could be established by a violation of state law.  We ruled that

> [t]his language makes clear that an offense that *meets the description* in one of the subsections of section 101(a)(43) is an aggravated felony whether the crime is in violation of federal or state law.  This phrase does not mean that every subsection of section 101(a)(43) necessarily describes an offense in violation of both federal and state law.  In fact, it is clear that such is not the case. *See, e.g.*, sections 101(a)(43)(L), (N) of the Act.

*Id.* at 10.

We disagreed that reaching such a conclusion would be inconsistent with the Board's previous rulings related to deportability resulting from an alien's conviction for an aggravated felony described in section 101(a)(43)(B) of the Act.  We found "no inconsistency in this regard" and pointed out that the definition set forth in section 101(a)(43)(B) of the Act is not formulated in the same manner as that in section 101(a)(43)(E). *Id.*

In so ruling, we recognized the historical background underlying the legislation that added the provision making clear that a state or foreign conviction would also constitute an aggravated felony conviction. We noted that it was once a matter of dispute whether a previous version of the aggravated felony definition in section 101(a)(43), which referenced "any drug trafficking crime as defined in [18 U.S.C. § 924(c)(2)]," was limited only to federal "drug trafficking crime[s]." *See Matter of Barrett*, 20 I&N Dec. 171, 172-73 (BIA 1990). In *Barrett*, a majority of the Board concluded that it was not so limited and remanded the record for a determination whether the respondent's state conviction "*include[d] all the elements necessary* for a conviction under 21 U.S.C. § 841(a)(1)." *Id.* at 178 (emphasis added). Subsequently, Congress amended the definition of an aggravated felony in section 101(a)(43) of the Act to include state and foreign offenses. *See Matter of Davis*, 20 I&N Dec. 536, 540, 542 (BIA 1992).

I cannot agree with the majority that the "penultimate sentence" of section 101(a)(43) of the Act conclusively overrides the meaning of the terms "described in" or "defined in" as used by Congress in various subparagraphs of that section. For example, section 101(a)(43)(F) states that a crime of violence is "as defined in" 18 U.S.C. § 16. Sections 16(a) and 16(b) *define* a crime of violence in a particular way. We do not take that provision to mean that any state designation of a crime as a crime of violence satisfies the terms of section 101(a)(43)(F) of the Act. Rather, we look to see if the elements of the state offense correspond to the specific terms used in either subsection (a) or (b) of section 16 of Title 18 of the United States Code. *See Matter of Sweetser*, Interim Decision 3390 (BIA 1999). Congress' addition of the last sentence in section 101(a)(43) of the Act simply clarifies that the convictions described therein are not limited to convictions under federal law. *See United States v. Castillo-Rivera*, *supra*, at 1023 ("The wording of 8 U.S.C. § 1101(a)(43) makes evident that Congress clearly intended state crimes to serve as predicate offenses . . . .").

In fact, the Ninth Circuit ultimately determined that state offenses were covered under section 101(a)(43)(E) of the Act based on the distinction between the terms "defined in" and "described in." *See United States v. Sandoval-Barajas*, 206 F.3d 853, 855 (9th Cir. 2000) ("Plainly the offense is not 'defined in' the federal and state statute in the same way. But the federal statute says that this federal crime only has to be 'described in' the state statute . . . ." (footnote omitted)); *id.* ("The subsection at issue used the phrase 'as described in' rather than 'as defined in.'"). Thus, even if the last sentence of section 101(a)(43) of the Act serves to overcome a jurisdictional element contained in 18 U.S.C. § 922(g)(1) and requires a broader reading of section 101(a)(43)(E), it only controls the outcome in this one particular case

because of the "described in" language of section 101(a)(43)(E) of the Act. I maintain that the specific language used in the subparagraphs of section 101(a)(43) of the Act still determines the scope of offenses that may be reached by each particular subparagraph.

## III. CONCLUSION

I concur in the result reached by the majority, as I agree that this result is required by the principle of acquiescence to circuit court rulings in the circuit in which our decision arises. I dissent, however, from the remainder of the reasoning relied on by the majority.