**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2418**

SANDRA YAMILETH ESPINAL-ANDRADES,

        Petitioner,

    v.

ERIC H. HOLDER, JR., Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  October 30, 2014      Decided:  January 22, 2015

Before SHEDD, AGEE, and WYNN, Circuit Judges.

Petition denied by published opinion.  Judge Wynn wrote the opinion, in which Judge Shedd and Judge Agee concurred.

**ARGUED:** Jorge Enrique Artieda, JORGE E. ARTIEDA LAW OFFICE PC, Falls Church, Virginia, for Petitioner.  Colin James Tucker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Stuart F. Delery, Assistant Attorney General, Civil Division, Anthony W. Norwood, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

WYNN, Circuit Judge:

Petitioner Sandra Yamileth Espinal-Andrades, a lawful permanent resident, pled guilty to arson under Maryland's arson-in-the-first-degree statute. At the heart of this appeal is whether that conviction qualifies as an aggravated felony under the Immigration and Nationality Act ("INA"). We agree with the immigration judge and Board of Immigration Appeals ("BIA") that it does and, for the reasons explained below, deny Espinal's petition.

I.

Espinal immigrated to the United States from El Salvador in 1999 and became a lawful permanent resident that same year. On August 27, 2009, a Maryland grand jury indicted her on four counts: (1) first degree arson, (2) second degree arson, (3) first degree malicious burning of property greater than $1,000, and (4) reckless endangerment. On January 27, 2010, Espinal entered a plea pursuant to N. Carolina v. Alford, 400 U.S. 25 (1970), on the first degree arson count, and the state dropped the remaining three charges. She was sentenced to 360 days in prison.

On March 12, 2013, the Department of Homeland Security ("DHS") issued Espinal a Notice to Appear ("Notice"). The Notice made several factual allegations concerning Espinal's

2

citizenship status, and she denied each one. Espinal also denied the charge that she was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii), contesting DHS's assertion that her first degree arson conviction qualified as an aggravated felony.

On May 9, 2013, an immigration judge ruled that all of DHS's factual allegations in the Notice were true, and Espinal raised no objections to this ruling. Espinal did, however, object to the classification of her state arson charge as an aggravated felony under 8 U.S.C. § 1101(a)(43)(E), which defines "aggravated felony" as, inter alia, "an offense described in" 18 U.S.C. § 844(i), a federal arson statute.

The parties briefed the issue, and on June 4, 2013, the immigration judge ruled against Espinal. In doing so, the immigration judge acknowledged that the Maryland statute lacked the federal jurisdictional element contained in § 844(i), which requires that the destroyed property be "used in interstate or foreign commerce." However, the immigration judge favorably cited two precedential BIA cases holding that convictions under state statutes qualified as removable aggravated felonies under the INA "even though the state offense[s] lack[ed] the jurisdictional elements of the federal crime[s]." A.R. 44 (citing Matter of Bautista, 25 I. & N. Dec. 616 (BIA 2011), vacated sub nom. Bautista v. Attorney Gen. of U.S., 744 F.3d 54 (3d Cir. 2014), and In re Vasquez-Muniz, 23 I. & N. Dec. 207

3

(BIA 2002) (en banc)). Accordingly, the immigration judge ruled that Espinal's arson conviction qualified as an aggravated felony and ordered her removed.

Espinal appealed the decision to the BIA. In a single-member panel decision, the BIA dismissed Espinal's appeal. It recognized agency precedent establishing that "Congress meant to cover State arson offenses when it referenced § 844(i) in the definition of an aggravated felony and did not intend to exclude them simply because a State crime lacked a Federal jurisdictional element." A.R. 3 (citing In re Vasquez-Muniz, 23 I. & N. Dec. 207 (BIA 2002) (en banc), and Matter of Bautista, 25 I. & N. Dec. 616 (BIA 2011)). Espinal then petitioned this Court for review of the BIA's decision.

II.

Generally, this Court lacks jurisdiction to review the final order of removal of an alien convicted of certain enumerated crimes, including an aggravated felony. Ramtulla v. Ashcroft, 301 F.3d 202, 203 (4th Cir. 2002). But under 8 U.S.C. § 1252(a)(2)(D), we retain jurisdiction to consider questions of law, such as whether a conviction qualifies as an aggravated felony. Mbea v. Gonzales, 482 F.3d 276, 279 (4th Cir. 2007).

We review the BIA's legal conclusions de novo. Martinez v. Holder, 740 F.3d 902, 909 (4th Cir. 2014). The BIA's statutory

4

interpretations of the INA are afforded the appropriate deference, "recognizing that Congress conferred on the BIA decisionmaking power to decide such questions of law." Id. (citing INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999), and Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)).

To determine what deference is owed, "we begin our analysis with a determination of whether the statute at issue is unambiguous with respect to the question presented. If so, then the plain meaning controls the disposition of [Espinal's] appeal." Bracamontes v. Holder, 675 F.3d 380, 384 (4th Cir. 2012). This is Chevron step one. But if the statute is silent or ambiguous, "the question for this court becomes whether the BIA's interpretation 'is based on a permissible construction of the statute.'" Saintha v. Mukasey, 516 F.3d 243, 251 (4th Cir. 2008) (quoting Chevron, 467 U.S. at 843). This is Chevron step two.

However, we do not afford the BIA's single-member decisions Chevron deference because they lack precedential value. See, e.g., Martinez, 740 F.3d at 909-10. But the single-member BIA decision on appeal here relies on precedential en banc and three-member panel decisions. See A.R. 3-4 (citing In re Vasquez-Muniz, 23 I. & N. Dec. 207 (BIA 2002) (en banc) (holding that possession of a firearm in violation of California law

5

qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43) despite the absence of the federal jurisdictional element), and Matter of Bautista, 25 I. & N. Dec. 616 (BIA 2011) (holding that a conviction under a New York arson statute qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43) despite the absence of the federal jurisdictional element), vacated sub nom. Bautista v. Attorney Gen. of U.S., 744 F.3d 54 (3d Cir. 2014)).[1] That controlling precedent is given Chevron deference.

## III.

With her main argument on appeal, Espinal contends that she is not deportable because her Maryland arson conviction does not qualify as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(E). Both the immigration judge and the BIA reached the opposite conclusion, relying on the BIA's precedential decisions in Matter of Bautista and In re Vasquez-Muniz. Upon careful review, we, too, reject Espinal's argument.

---

[1] Although the Third Circuit vacated the BIA decision in Matter of Bautista, 25 I. & N. Dec. 616 (BIA 2011), this does not affect the decision's precedential effect outside the Third Circuit. See Matter of Anselmo, 20 I. & N. Dec. 25, 31 (BIA 1989) ("We are not required to accept an adverse determination by one circuit court of appeals as binding throughout the United States." (citing several circuit court cases)).

6

A.

To provide context for our Chevron analysis, we find it helpful to first set out the pertinent statutes. Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). And an "aggravated felony" is "an offense described in . . . 18 U.S.C. § 844(i)." 8 U.S.C. § 1101(a)(43)(E).

In turn, 18 U.S.C. § 844(i) prescribes various punishments for an individual who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." The elements of 18 U.S.C. § 844(i) and the Maryland statute under which Espinal was convicted are identical in all but one respect: the Maryland statute lacks the federal jurisdictional element requiring that the destroyed property be "used in interstate or foreign commerce." Compare 18 U.S.C. § 844(i), with Md. Code Ann., Crim. Law § 6-102 (West). See also Gov't's Br. 11 (noting that this is not in dispute).

Finally, the penultimate sentence of 8 U.S.C. § 1101(a)(43) states that "[t]he term ['aggravated felony'] applies to an offense described in this paragraph whether in violation of

7

<u>Federal or State law</u> and applies to such an offense in violation of the <u>law of a foreign country</u> for which the term of imprisonment was completed within the previous 15 years." 8 U.S.C. § 1101(a)(43) (emphases added).

B.

In analyzing these statutes under <u>Chevron</u>, we "must first consider whether 'Congress has directly spoken to the precise question' at issue." <u>United States v. Thompson–Riviere</u>, 561 F.3d 345, 350 n.2 (4th Cir. 2009) (quoting <u>Chevron</u>, 467 U.S. at 842). To determine whether Congress has spoken directly through the relevant statutes, we must "begin by examining [the statute's] plain language" and "give the relevant terms their common and ordinary meaning." <u>Yi Ni v. Holder</u>, 613 F.3d 415, 424 (4th Cir. 2010).

Section § 1101(a)(43)(E) defines "aggravated felony," in relevant part, as "an offense <u>described in</u> . . . 18 U.S.C. § 844(i)." (emphasis added). By contrast, three other subparagraphs in 8 U.S.C. § 1101(a)(43) use the term "<u>defined in</u>" instead of "<u>described in</u>" to identify aggravated felonies. <u>E.g.</u>, 8 U.S.C. § 1101(a)(43)(B), (C), and (F).

Comparing dictionary definitions, "described in" is the broader of the two terms. The American Heritage Dictionary defines "define" as "[t]o state the precise meaning," "make clear the outline or form of," or "[t]o specify distinctly."

8

The American Heritage Dictionary of the English Language 476 (5th ed. 2011). By contrast, the same dictionary defines "describe" as "[t]o convey an idea or impression of," or "[t]o trace the form or outline of." Id. at 490. Other circuits have also interpreted the terms this way. See, e.g., Torres v. Holder, 764 F.3d 152, 157 (2d Cir. 2014) (noting that "described in" has a "broader standard"); United States v. Castillo-Rivera, 244 F.3d 1020, 1023 (9th Cir. 2001) (noting that "described in" is a looser standard).[2] Bearing the plain meaning of "define" and "describe" in mind, it appears as if Congress intended for the aggravated felonies "described in" the pertinent federal statute to include crimes that are not "defined in"—that is, precisely identical to—that federal statute.

Further, the penultimate sentence of 8 U.S.C. § 1101(a)(43) states that convictions under the described offenses qualify as aggravated felonies "whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years." (emphases added). It is "a cardinal principle of statutory construction that a statute

---

[2] We recognize that the Third Circuit, in a divided opinion, ruled differently on this precise issue. Bautista, 744 F.3d at 54. Frankly, we disagree with the majority opinion's analysis and conclusion, not least for many of the reasons expressed in Judge Ambro's thoughtful dissent. Id. at 69-74.

9

ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Alaska Dep't of Envtl. Conservation v. E.P.A., 540 U.S. 461, 489 n.13 (2004) (citations omitted). Accordingly, we must try to give every word in the statute meaning to avoid rendering its terms superfluous. Discover Bank v. Vaden, 396 F.3d 366, 369 (4th Cir. 2005).

Doing so here yields an obvious result: Because state laws will seldom—if ever—contain a federal jurisdictional element, and foreign crimes are even less likely to contain a United States-jurisdictional element, we conclude that Congress clearly expressed its intent for aggravated crimes "described in" federal statutes to include substantively identical state and foreign crimes that lack only the federal jurisdictional element. Any contrary reading would render the penultimate sentence superfluous.

The plain meaning of the terms and the application of statutory construction principles leave us with no doubt regarding Congress's intent. Nevertheless, a sister circuit has come down the other way on this issue. Bautista, 744 F.3d at 57. Recognizing that such a disagreement may be, to some, an indication that the statute is ambiguous (again, we do not think it is), we take a belt-and-suspenders approach and turn to the second step of Chevron.

C.

At Chevron step two, we determine whether the BIA's interpretation of 8 U.S.C. § 1101(a)(43)(E) is reasonable. If it is, we cannot substitute our own preferred statutory interpretation. Chevron, 467 U.S. at 844. And the BIA's interpretation is reasonable as long as it is not "arbitrary, capricious, or manifestly contrary to the statute." Id.

As noted above, the single-member BIA panel that issued Espinal's decision relied on the precedential decisions of In re Vasquez-Muniz and Matter of Bautista. In In re Vasquez-Muniz, the BIA looked at the statute's "overall design," "the language of the aggravated felony provision itself," "very specific [statutory] references" that a contrary interpretation would render superfluous, and persuasive authority from an analogous Ninth Circuit case.[3]  23 I. & N. Dec. at 209–12. In Matter of

---

[3] In In re Vasquez-Muniz, the BIA briefly discussed United States v. Castillo-Rivera, 244 F.3d 1020 (9th Cir. 2001). 23 I. & N. Dec. 207, 212 (BIA 2002). Castillo-Rivera held that a state firearm possession offense was an aggravated felony under the INA, concluding that that the interstate commerce element included in 18 U.S.C. § 922(g) is "merely a jurisdictional basis." 244 F.3d at 1023–24. Two circuits have since adopted the same interpretation. See Nieto Hernandez v. Holder, 592 F.3d 681, 685 (5th Cir. 2009) (holding that the "interstate commerce element is simply an element that ensures federal jurisdiction" and that requiring it to be present in a state offense "would undermine Congress's evident intent that jurisdiction be disregarded in applying" the definition of an aggravated felony); Negrete-Rodriguez v. Mukasey, 518 F.3d 497, 501–03 (7th Cir. 2008) (holding that, "[a]lthough not 'mere
(Continued)

Bautista, the BIA reaffirmed In re Vasquez-Muniz's analysis and, after analyzing Jones v. United States, 529 U.S. 848 (2000) (discussing scope of a federal arson statute vis-à-vis a federal jurisdictional element), specifically concluded that "Congress meant to cover State arson offenses when it referenced § 844(i) in the definition of an aggravated felony." 25 I. & N. Dec. at 618–21. The BIA tethered its interpretation to traditional tools of statutory interpretation, and nothing leads this Court to conclude that its construction is unreasonable.

In sum, we conclude that (1) Espinal's state arson conviction unambiguously qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(E), and (2) even if any ambiguity existed, the BIA's interpretation was reasonable.

IV.

Espinal advances two arguments in the alternative: (1) the BIA should have applied the rule of lenity to her case, and (2) the BIA's application of Matter of Bautista was impermissibly retroactive. Neither argument has merit.

---

surplusage,' a jurisdictional element does little more than ensure that the conduct regulated in a federal criminal statute is within the federal government's limited power to proscribe" and, therefore, finding the state offense to be an aggravated felony).

12

Espinal first argues that the BIA should have applied the rule of lenity to her case. In the immigration context, "the rule of lenity stands for the proposition that ambiguities in deportation statutes should be construed in favor of the noncitizen." Hosh v. Lucero, 680 F.3d 375, 383 (4th Cir. 2012) (citing Fong Haw Tan v. Phelan, 333 U.S. 6, 9-10 (1948)).

Assuming, without deciding, that Chevron still leaves some place for the rule of lenity,[4] "[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute." Muscarello v. United States, 524 U.S. 125, 138-39 (1998) (citations omitted). That is simply not the case here; the pertinent statute is not grievously ambiguous. The rule of lenity therefore has no place here.

Espinal next argues that applying Matter of Bautista to her case violates her due process rights because the BIA adopted "a novel construction of the INA and federal criminal law," leaving her without the requisite notice. Pet.'s Br. 19. Espinal's

_____

[4] In light of Chevron, some have questioned the rule of lenity's role in the immigration context. See, e.g., David S. Rubenstein, Putting the Immigration Rule of Lenity in Its Proper Place: A Tool of Last Resort After Chevron, 59 ADMIN. L. REV. 479 (2007) (arguing that the rule of lenity should be used to resolve lingering statutory ambiguities only after Chevron's second step); Matthew F. Soares, Note, Agencies and Aliens: A Modified Approach to Chevron Deference in Immigration Cases, 99 CORNELL L. REV. 925 (2014) (arguing that the immigration rule of lenity should be used as an underlying principle to inform the Chevron analysis).

13

2010 conviction postdates the 1996 enactment of 8 U.S.C. § 1101(a)(43). In relying on the 2011 Matter of Bautista decision, the BIA therefore "did not retroactively apply a new law but instead applied [its] determination of what the law 'had always meant.'" De Quan Yu v. U.S. Attorney Gen., 568 F.3d 1328, 1333 (11th Cir. 2009) (per curiam) (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 313 n.12 (1994)). Once Matter of Bautista issued, "that decision became the controlling interpretation of the law and was entitled to full retroactive effect in all cases still open on direct review, regardless of whether the events predated the . . . decision." Id. at 1334. And although the Third Circuit vacated Matter of Bautista, this does not affect the decision's precedential effect in the Fourth Circuit. See supra note 1. Accordingly, Matter of Bautista was not applied impermissibly, and it governs Espinal's case.

V.

For the foregoing reasons, we deny Espinal's petition for review.

PETITION DENIED

14