**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIO SANDOVAL-GOMEZ, AKA
Milton Alvarado-Sandine,
*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,
*Respondent*.

No. 10-73448

Agency No.
A092-563-965

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 3, 2014—Pasadena, California

Filed September 22, 2014

Before: Ronald M. Gould and N. Randy Smith, Circuit
Judges, and Morrison C. England, Chief District Judge.[*]

Opinion by Judge England

---

[*] The Honorable Morrison C. England, Jr., Chief District Judge for the U.S. District Court for the Eastern District of California, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Mario Sandoval-Gomez's petition for review of the Board of Immigration Appeals' decision, following remand, that his conviction for attempted arson, in violation of California Penal Code § 455, constituted an aggravated felony as an offense described in the federal explosive materials statute, 18 U.S.C. § 844(f), (i).

The panel held that given the scope of the BIA's remand order, the Immigration Judge properly allowed the government to file new charges against Sandoval-Gomez. On the merits, the panel held that CPC § 455 is divisible, and that Sandoval-Gomez's conviction is an aggravated felony under the modified categorical approach. The panel held that the additional federal element found in 18 U.S.C. § 844(i) but not in CPC § 455 is a purely jurisdictional element which must be disregarded in determining whether the state law qualifies as an aggravated felony under federal law. The panel noted that the Third Circuit reached a contrary conclusion in *Bautista v. Attorney General of the United States*, 744 F.3d 54 (3d Cir. 2014).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Zoheb P. Noorani (argued), Sabrina H. Strong, and Carlos M. Lazatin, O'Melveny & Myers LLP, Los Angeles, California, for Petitioner.

M. Jocelyn Lopez Wright (argued), United States Department of Justice, Civil Division/Office of Immigration Litigation; Tony West, Assistant Attorney General, Civil Division; Leslie McKay, Assistant Director, Office of Immigration Litigation, for Respondent.

**OPINION**

ENGLAND, Chief District Judge:

Petitioner Mario Sandoval-Gomez petitions for review of the Board of Immigration Appeals' ("BIA") decision ordering him removed to Mexico. According to Petitioner, the BIA remanded his case to the Immigration Judge ("IJ") for the limited purpose of reconsidering the effect on his case of an intervening decision, *Jordison v. Gonzales*, 501 F.3d 1134 (9th Cir. 2007). Petitioner therefore first contends that, on remand, the Government was precluded from arguing that his attempted arson conviction under California Penal Code section 455 was an aggravated felony under the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. § 1101(a)(43)(E)(i), as an offense described in the federal explosive materials statute, 18 U.S.C. § 844(f), (i). Petitioner further argues that the BIA erred as a matter of law in concluding that his state conviction categorically qualified as an aggravated felony because Petitioner's conviction had nothing to do with explosives and because, unlike § 844(f),

(i), the state statute contains no federal jurisdictional requirement.    We reject these arguments and deny the petition.

# I

## A

In September 2006, Petitioner was convicted of attempted arson in violation of California Penal Code section 455.  He also had several other convictions, dating back to the early 1990s, for receiving stolen property, possession of controlled substances, and violating a protective order.

## B

The Government first initiated removal proceedings against Petitioner based on his attempted arson conviction on April 19, 2007.  The following month, the IJ determined that Petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because the attempted arson conviction constituted a "crime of violence," thus making it an aggravated felony and rendering Petitioner removable and ineligible for cancellation of removal.

Petitioner appealed to the BIA arguing that the Ninth Circuit's intervening decision in *Jordison* made clear that his attempted arson conviction did not constitute a crime of violence.  The Government nonetheless moved for summary affirmance, arguing that *Jordison* had no effect on the IJ's ruling.  In January 2008, the BIA summarily affirmed the IJ's decision.  Petitioner subsequently filed a petition for review in this court.

**C**

In his opening brief in Case No. 09-70476, Petitioner argued, as he had before the BIA, that his conviction did not qualify as a crime of violence.  Before the Government filed its answering brief, however, it moved the BIA to sua sponte reconsider its summary affirmance of the IJ's decision because the BIA had failed previously to consider the impact of *Jordison*.  The Government thus asked that the BIA: "1) reconsider and reopen the case 2) accept [a new] Form I-261, Additional Charges of Deportability/Inadmissibility and 3) remand to the IJ to address the original charge of removability in light of *Jordison* and to address the additional charge in the I-261."

In January 2009, the BIA granted the Government's motion.  According to the BIA, reconsideration was warranted because "DHS ha[d] identified a potential error of law or fact," and, although the Government had not raised the issue previously, "the issue [was] of such gravity that it merit[ed] reconsideration."  The BIA "remand[ed] the case to the Immigration Judge to permit him to consider this case in the first instance" and ordered that "[t]he Board's decision dated January 22, 2008, [was] vacated and proceedings [were] remanded for any further proceedings the Immigration Judge deem[ed] appropriate and for a new decision."  This court then dismissed the pending petition for lack of jurisdiction "because the BIA remanded the case for further proceedings and a new decision and there [was] no longer a final order of removal."

**D**

On March 3, 2009, in the second round of proceedings before the IJ, the Government submitted two new I-261s alleging that Petitioner was removable on several grounds not previously raised.    More specifically, the Government alleged, among other things, that Petitioner was removable under section 237(a)(2)(B)(i) of the INA as an alien who had been convicted of a controlled substance offense.    The Government further argued for removal pursuant to section 237(a)(2)(A)(iii) because, under 8 U.S.C. § 1101(a)(43)(E)(i), Petitioner's attempted arson conviction was an offense described in 18 U.S.C. § 844 (relating to explosive materials offenses) and was thus an aggravated felony.    The Government conceded that, contrary to its prior position in the earlier proceedings, Petitioner was not removable on the basis that his attempted arson conviction was a crime of violence.

As a threshold matter, the IJ observed that the BIA's "remand order made this to be a pretty open hearing, to be heard as the Court deemed appropriate for the issuance of a new decision." The IJ noted that "this [was] not a new action. It [was] not subject to res judicata or collateral estoppel, based upon the controlling precedent." Indeed, the IJ "[was] satisfied that [the Government] followed the procedures that [were] mandated to be able to get back . . . and charge the [Petitioner] with allegations that were not originally filed in the Notice to Appear."

The IJ again found Petitioner removable, this time based on Petitioner's controlled substance conviction.  However, the IJ rejected the Government's theory that Petitioner was alternatively removable and ineligible for cancellation on the

basis that his attempted arson conviction was an aggravated felony.

The IJ further determined, although Petitioner was removable, he remained eligible for cancellation of removal under 8 U.S.C. § 1229b(a), which provides for discretionary cancellation if, among other things, an alien has not been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b. The IJ reasoned that Petitioner's attempted arson conviction did not categorically qualify as an aggravated felony under the federal explosive materials statute. More specifically, the IJ determined that Petitioner's state law conviction could not qualify as an aggravated felony because the state statute, California Penal Code section 455, did not contain the jurisdictional elements set forth in the relevant federal provisions, 18 U.S.C. § 844(f), (i). The IJ then exercised his discretion and granted Petitioner's application for cancellation.

## E

The parties cross-appealed to the BIA. The Government argued that the IJ had erred: (1) "in failing to sustain the ground of removability alleging that the [Petitioner] had been convicted of an aggravated felony explosives crime and an aggravated felony attempted explosives crime"; and (2) "by granting [Petitioner] cancellation of removal pursuant to 8 U.S.C. § 1229b(a) as a matter of his discretion." The BIA agreed, and reversed the IJ. Despite the fact that the California statute of conviction contained no "interstate commerce" requirement, the BIA concluded Petitioner's arson conviction was encompassed by the language of the federal statute because the interstate requirement was jurisdictional only. According to the BIA, attempted arson

thus constituted an aggravated felony for immigration purposes, and Petitioner was removable and statutorily ineligible for cancellation.[1]

In reaching this conclusion, the BIA also rejected Petitioner's arguments that: (1) "it was error for the Immigration Judge to permit DHS to lodge additional removal charges on remand"; and (2) "the DHS was barred by res judicata from charging him with removability as an aggravated felon." According to the BIA, the remand order was broad enough to permit the bringing of new charges, and res judicata did not act as a bar because, given the remand, no final order had been entered in the case. The instant Petition for Review ("Petition") followed in which Petitioner contends: (1) that the IJ improperly permitted the Government to lodge new charges on remand from the BIA; and (2) that the BIA erred in concluding that his attempted arson conviction qualified as an aggravated felony under the federal explosives statute.

## II

We review for abuse of discretion the BIA's grant or denial of a motion to reconsider or reopen. *Barroso v. Gonzales*, 429 F.3d 1196, 1200 (9th Cir. 2005); *Lainez-Ortiz v. I.N.S.*, 96 F.3d 393, 395 (9th Cir. 1996). Reversal is warranted if the BIA "acted arbitrarily, irrationally, or contrary to law." *Lainez-Ortiz*, 96 F.3d at 395.

---

[1] Because this finding rendered Petitioner ineligible for cancellation of removal, the BIA did not need to address the Government's argument that the IJ had improperly exercised its discretion to grant cancellation.

"[W]e lack jurisdiction to review an order of removal against an alien removable for having committed an aggravated felony." *Lopez-Jacuinde v. Holder*, 600 F.3d 1215, 1217 (9th Cir. 2010); 8 U.S.C. § 1252(a)(2)(C). "Nonetheless, this Court retains jurisdiction to determine its jurisdiction, which includes determining whether a particular offense constitutes an offense governed by the jurisdiction-stripping provisions." *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004). Accordingly, "we can reach the question of whether [Petitioner's] conviction constituted an aggravated felony, a question we review de novo." *Murillo-Prado v. Holder*, 735 F.3d 1152, 1155–56 (9th Cir. 2013) (citing *Ramirez-Villalpando v. Holder*, 645 F.3d 1035, 1038 (9th Cir. 2011)).

## III

### A

According to Petitioner, as a threshold matter, the Government was barred from relitigating the merits of his removability on remand from the BIA because: (1) doing so exceeded the scope of the BIA's remand order, which Petitioner contends was intended only to permit the parties to address the *Jordison* decision; (2) the BIA did not reopen the case to permit the filing of additional charges against Petitioner; and (3) even if the BIA's remand order is construed as granting the request to reopen, such a decision would have contravened the BIA's own regulations, principles of res judicata, and the law of the case. We disagree.

There is no dispute that the BIA acted within its discretion in granting reconsideration. Indeed, Petitioner does not even

attempt to challenge the BIA's decision in that regard, arguing instead that, in order to entertain any new charges, the BIA must also have impermissibly *reopened* the case. Any potential challenge to reconsideration has thus been waived. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994).

We also reject Petitioner's arguments that granting the request to reopen would have contravened the BIA's own regulations, principles of res judicata, and the law of the case because they turn on the flawed premise that the BIA must instead have sua sponte reopened the case to permit the filing of those charges. Because the case was remanded, there was nothing to reopen in the first place, and consequently, there could be no violation of the regulations governing such motions. *See* 8 C.F.R. § 1003.2(c) (requiring, among other things, that motions to reopen "state the new facts that will be proven at a hearing to be held if the motion is granted" and that "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing").

Given the scope of the BIA's remand order, we conclude that the IJ properly allowed the Government to file new charges against Petitioner. In its order granting reconsideration, the BIA vacated its prior order entirely and broadly instructed the IJ to conduct "any further proceedings the Immigration Judge deems appropriate." Despite the BIA order's language indicating that the motion for reconsideration was granted for the *purpose* of giving the IJ the opportunity to rule on the applicability of the *Jordison* decision, the *scope* of the remand order itself was quite broad, leaving the IJ free to adjudicate new charges. *See Fernandes*

*v. Holder*, 619 F.3d 1069, 1074 (9th Cir. 2010) ("[T]he IJ's jurisdiction on remand from the BIA is limited only when the BIA expressly retains jurisdiction and qualifies or limits the scope of the remand to a specific purpose. An articulated purpose for the remand, without any express limit on scope, is not sufficient to limit the remand such that it forecloses consideration of other new claims or motions that the IJ deems appropriate or that are presented in accordance with relevant regulations."). Moreover, the BIA's regulations expressly permit the Government to bring "[a]t any time during deportation or removal proceedings, additional or substituted charges of deportability," which is precisely what the Government did here. *See* 8 C.F.R. § 1003.30. Having rejected Petitioner's procedural arguments, we now turn then to the merits of his challenge to the removal order.

**B**

An analysis of the merits requires us to undertake two separate, but related inquiries. In doing so, we conclude: (1) California Penal Code section 455 is divisible and, applying a modified categorical approach, Petitioner's attempted arson conviction qualifies as an aggravated felony; and (2) Petitioner is not saved from removal by the fact that the state statute lacks jurisdictional elements included in the corresponding federal provisions.[2]

---

[2] The BIA's omission of an exhaustive analysis of the first prong here, whether California Penal Code section 455 was divisible or whether a modified categorical approach should be applied, is understandable given that the BIA did not have the benefit of the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). Regardless, "whether an offense constitutes an aggravated felony for which an alien is removable" is a question of law, which is reviewed de novo, and which we may properly address in the first instance here. *In re Mercury Interactive*

**1**

Aggravated felonies include "offense[s] described in . . . section 842(h) or (i) of Title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses)." 8 U.S.C. § 1101(a)(43)(E)(i). The first question before us is whether, as the Government contends, California Penal Code section 455 is a categorical match to 18 U.S.C. § 844(f)(1) or 844(i). The federal provisions provide:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

18 U.S.C. § 844(f)(1).

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any

---

*Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (questions of law may be addressed for the first time on appeal); *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004) (whether a state conviction qualifies as an aggravated felony is a question of law).

activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

18 U.S.C. § 844(i).

At the time of Petitioner's conviction, California Penal Code section 455 (2006)**[3]** mandated:

Any person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any structure, forest land or property, or who commits any act preliminary thereto, or in furtherance thereof, is punishable by

---

**[3]** In 2011, subsection letters "(a)" and "(b)" were added to the beginning of the existing paragraphs of California Penal Code section 455. These were the only changes made, however, and the language of the statute remained the same.

imprisonment in the state prison for 16 months, two or three years.

The placing or distributing of any flammable, explosive or combustible material or substance, or any device in or about any structure, forest land or property in an arrangement or preparation with intent to eventually willfully and maliciously set fire to or burn same, or to procure the setting fire to or burning of the same shall, for the purposes of this act constitute an attempt to burn such structure, forest land or property.

We employ a "categorical approach" to determine whether a conviction qualifies as an aggravated felony. *See Taylor v. United States*, 495 U.S. 575 (1990). If the "full range of conduct" covered by state law falls within the confines of the federal offense, Petitioner's state conviction is "categorically a removable offense" and our inquiry ends. *See Coronado v. Holder*, ___ F.3d ____, 2014 WL 3537027, at *3 (9th Cir. July 18, 2014) (quoting *Alanis-Alvarado v. Holder*, 558 F.3d 833, 836 (9th Cir. 2009)). If it is possible for a person to be convicted under state law without also being convicted under federal law, then a modified categorical approach may, under certain circumstances, be appropriate.

As indicated in note 2 above, at the time the BIA issued its decision in this case, it did not have the benefit of the Supreme Court's recent decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). The Court in *Descamps* made clear that the modified categorical approach "helps effectuate the categorical analysis when a divisible statute, listing

potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id.* at 2283. Under the modified approach, courts are permitted "as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the [Petitioner's] prior conviction." *Id.* at 2284. The modified approach "merely enables a court to ascertain the specific element that a defendant was convicted of violating when a statute contains multiple, alternative elements." *Coronado*, 2014 WL 3537027, at *4. "Divisibility is therefore an 'elements-based' inquiry and not a 'facts-based' one." *Id.*

The felony complaint shows that Petitioner's attempted arson conviction was based on what is now section 455(a), or section 455's first provision. We initially note that both § 844(f)(1) and (i) include an "extra" element—"an explosive"—not found in the relevant subsection of 455. Based on this "extra" element, a person could be convicted under § 844(f)(1) or (i), but not be convicted under section 455. However, anyone convicted of at least one subset of section 455(a) (*i.e.*, one convicted of "willfully and maliciously attempt[ing] to set fire to . . . any structure, forest land or property") could be convicted under either provision of § 844 if the jurisdictional elements were met under the latter provisions.[4] Thus, it seems that § 455 would satisfy the elements of the generic crime. *See Descamps*, 133 S. Ct. at 2283.

---

[4] A more thorough discussion of the effect of the federal jurisdictional elements follows in the next section.

However, section 455 is divisible not only based on the now sections (a) and (b), but it is also divisible within itself. A violation of section 455(a) can be committed in several ways. One could willfully and maliciously: (1) attempt to set fire to or attempt to burn any structure, forest land, or property; (2) aid, counsel or procure the burning of any structure, forest land or property; or (3) commit any act preliminary thereto, or in furtherance thereof. *See People v. Carrasco*, 77 Cal. Rptr. 3d 912, 916 (Cal. Ct. App. 2008).

This reading is supported by the applicable jury instruction:

> In order to prove this crime, each of the following elements must be proved:
>
> [1 A person attempted to [set fire to] [or] [burn] any structure, forest land, or property;] [1 A person aided, counselled, or procured the burning of any structure, forest land, or property;] [1 A person committed an act preliminary to or in furtherance of the setting fire to or burning of any structure, forest land, or property;]
>
> 2 That person acted willfully and maliciously; and
>
> 3 That person had the specific intent to set fire to, or burn a structure, forest land, or property [of another].

CALJIC 14.84.  This statute is thus divisible because it "contain[s] multiple, alternative *elements* of functionally separate crimes." *Rendon v. Holder*, ___ F.3d ____, 2014 WL 4115930, at *3 (9th Cir. Aug. 22, 2014).

We must next determine whether all three of the ways to commit an offense under section 455 are a categorical match to § 844(f)(1) or § 844(i).  Based on a comparison of the statutes, we conclude they are not.  The second and third ways to commit the crime are not categorical matches, as their language—"aided, counselled, or procured" or "committed an act preliminary to or in furtherance"—does not exist in § 844(f)(1) or (i).  However, one provision of section 455—"[a]ny person who willfully and maliciously attempts to set fire to or attempts to burn . . . any structure, forest land or property"—is a categorical match.  Thus, a modified approach must be taken to determine whether Petitioner pled guilty to this provision.

The complaint to which Petitioner pled guilty includes all three divisible crimes but uses "and" rather than "or" to join them.  Moreover, the abstract of judgment does not limit Petitioner's plea of guilty to one indivisible crime, but rather shows that Petitioner pled guilty to the alleged single count listed.  Therefore, applying the modified approach, we conclude that Petitioner pled guilty to "willfully and maliciously attempt[ing] to set fire to or attempt[ing] to burn . . . any structure, forest land or property."  As a result, the BIA did not err in concluding that Petitioner committed an aggravated felony.

**2**

Aggravated felonies are enumerated in section 101(a)(43) of the INA, and include offenses "described in" 18 U.S.C. § 844(i). 8 U.S.C. § 1101(a)(43)(E)(i). "[T]he term [aggravated felony] applies to an offense described in [section 101(a)(43)] whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years." *Id.* § 1101(a)(43).

The only remaining aspect of Petitioner's argument, and the part on which the parties focus, is that other federal elements prevent California Penal Code section 455 from being a categorical match. Specifically, the elements are: "any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance," § 844(f)(1), and "any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," § 844(i). Because we conclude Petitioner's attempted arson conviction constitutes an aggravated felony under § 844(i), we need not address Petitioner's challenge to § 844(f)(1).

We conclude that this additional federal element is purely "jurisdictional" and must be disregarded for our instant purposes. Indeed, in the context of state felon-in-possession convictions, both this Court and the BIA have previously determined that purely jurisdictional elements should be disregarded in determining whether those state laws categorically qualified as aggravated felonies under federal

law.  First, in *United States v. Castillo-Rivera*, 244 F.3d 1020, 1021 (9th Cir. 2001), we held that enhancement of a criminal sentence for removal subsequent to deportation for an aggravated felony was proper when the defendant had previously been convicted under a state felon-in-possession statute.  We concluded that violations of California's possession statute categorically qualified as aggravated felonies under the corresponding provision of federal law, 18 U.S.C. § 922(g)(1), despite the lack of any jurisdictional element under state law.  *Id.*  Interpreting the same basic provisions of federal law relevant here, we reasoned:

> The wording of 8 U.S.C. § 1101(a)(43) makes evident that Congress clearly intended state crimes to serve as predicate offenses for the purpose of defining what constitutes an aggravated felony.  Section 1101(a)(43) explicitly states that "[t]he term applies to an offense described in this paragraph whether in violation of Federal or State law."  8 U.S.C. § 1101(a)(43).  Moreover, § 1101(a)(43)(E) defines aggravated felony as "an offense described in" several federal statutory provisions, including § 922(g)(1).  *Id.*  As we have previously noted, Congress "as a practical matter . . . had to use some looser standard such as 'described in' rather than the more precise standard of 'defined in,' if it wanted more than a negligble number of state offenses to count as aggravated felonies." [*United States v.*] *Sandoval-Barajas*, 206 F.3d [853,] 855 [(9th Cir. 2000)].

> Interpreting the jurisdictional element of
> § 922(g) to be necessary in order for a state
> firearms conviction to constitute an
> aggravated felony under § 1101(a)(43)(E)(ii)
> would reduce the number of state firearms
> offenses that qualify to no more than a
> negligible number. Rarely, if ever, would a
> state firearms conviction specify whether a
> commerce nexus exists. If we were to
> construe the jurisdictional nexus of the federal
> felon in possession provision to be a
> necessary element for a state crime to qualify
> as an aggravated felony, we would undermine
> the language of the aggravated felony statute
> and the evident intent of Congress.

*Id.* at 1023–24 (footnote omitted). We also reasoned that the inclusion of foreign offenses in the aggravated felony statute further supported the conclusion that federal jurisdictional elements should not be considered for categorical purposes. *Id.* at 1023 n.4. Otherwise, "[a]lthough a foreign commerce nexus would be a possibility, there is still no reason to believe that anything other than a negligible number of foreign offenses would qualify because it is the Commerce Clause of the U.S. Constitution that lends such an element any legal significance." *Id.* (internal citations omitted).

Subsequently, in *In re Vasquez-Muniz*, 23 I. & N. Dec. 207 (2002), the BIA applied *Castillo-Rivera* directly in the immigration context. The *Vasquez-Muniz* panel also reasoned that great weight should attach to the penultimate sentence of section 101(a)(43). *Id.* at 210. According to the panel, use of the phrase "described in" indicated that the penultimate sentence provided a guide to Congress's intent

that "the crimes specified are aggravated felonies regardless of whether they fall within the jurisdiction of the federal government, a state, or, in certain cases, a foreign country." *Id.* "The language clearly reflects a concern over substantive offenses rather than any concern about the jurisdiction in which they are prosecuted." *Id.* The BIA concluded that "to give this language meaning, it must render irrelevant any purely jurisdictional element appearing in the crimes enumerated." *Id.* at 210–11.

In addition, the BIA reasoned that its conclusion was bolstered by the fact that "owing to the nature of federal and state jurisdictional requirements, it would be very rare for a state to include federal jurisdictional language within its criminal statutes." *Id.* at 211. "Consequently, if state crimes must include a federal jurisdictional element in order to be classified as aggravated felonies, then virtually no state crimes would ever be included in section 101(a)(43)(E), despite the statute's language to the contrary." *Id.* The panel concluded that "the Act, in its overall design, in the language of the aggravated felony provision itself, and in the very specific reference noted above, clearly contemplates that subparagraph (E) of the aggravated felony provision encompasses state crimes." *Id.*

Similarly, the *Vasquez-Muniz* panel reasoned that foreign statutes as well "are extremely unlikely to contain jurisdictional elements similar to those appearing in our federal statutes." *Id.* at 211–12. Indeed, as the panel stated, a decision to the contrary would mean that a number of grave federal offenses "clearly 'described in' the subparagraphs of section 101(a)(43) of the Act would be found to have no foreign counterpart and would not be classified as aggravated felonies despite the statutory direction to so classify them."

*Id.* at 212. According to the BIA, this result "would contravene the explicit statutory directive Congress has provided in the penultimate sentence of section 101(a)(43): to identify the specified crimes as aggravated felonies whether in violation of federal or state law, or the law of a foreign country." *Id.* "It would be unreasonable to assume that Congress intended to exclude certain specified crimes from the definition of an aggravated felony simply because they lack a jurisdictional element that would be meaningless to the enacting foreign or state jurisdiction." *Id.*[5]

The Eighth Circuit has extended the same analysis beyond the felon-in-possession context to conclude that a state racketeering statute qualified as an aggravated felony despite the state law's lack of an interstate or foreign commerce element set forth in the corresponding federal law. *Spacek v. Holder*, 688 F.3d 536, 538–39 (8th Cir. 2012). In *Spacek*, that court considered whether the state law was an aggravated felony under 8 U.S.C. § 1101(a)(43)(J), which included offenses "described in section 1962 of Title 18 (relating to racketeer influenced corrupt organizations)." *Id.* at 538. Section 1962, in turn, provides:

---

[5] Other circuit courts have since weighed in, approving of and following the analysis set forth in *Castillo* and *Vasquez-Muniz*. *See Negrete-Rodriguez v. Mukasey*, 518 F.3d 497, 504–05 (7th Cir. 2008) (holding that the BIA "did not err in determining that [a petitioner's] . . . Illinois conviction for possession of a firearm by a felon constituted an 'aggravated felony' and therefore made [the petitioner] statutorily ineligible for cancellation of removal" despite the state law's lack of a federal jurisdictional element); *Nieto Hernandez v. Holder*, 592 F.3d 681, 684 (5th Cir. 2009) (holding that "state felon-in-possession offenses . . . need not have an interstate commerce element in order for the offense to be an offense 'described in' 18 U.S.C. § 922(g)(1)").

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

As here, the state statute analyzed by the Eighth Circuit in *Spacek* lacked an interstate or foreign commerce element. *Spacek*, 688 F.3d at 538. Significantly, the *Spacek* court expressly agreed with the reasoning of this circuit's *Castillo-Rivera* decision, the BIA's *Vasquez-Muniz* decision, and the decisions of the Fifth and the Seventh Circuits in *Nieto Hernandez* and *Negrete-Rodriguez*, respectively. *Id.* It then opined:

"The requirement of an interstate nexus arises from constitutional limitations on congressional power intrastate activities under the Commerce Clause. Its inclusion in criminal and civil statutes is most often solely for the purpose of conferring federal jurisdiction rather than of defining substantive elements of an offense." *United States v. Bryant*, 766 F.2d 370, 375 (8th Cir. 1985). Section 1101(a)(43)(J) requires only "an offense *described in* section 1962 of title 18" (emphasis added), while Congress used the more restrictive construction "as *defined in*" elsewhere in the statute, *see* 8 U.S.C.

§ 1101(a)(43)(B), (C), (F) (emphasis added).
*See Nieto Hernandez*, 592 F.3d at 685–86.
Additionally, the penultimate sentence of
§ 1101(a)(43) states that the term aggravated
felony "applies to an offense described in this
paragraph whether in violation of Federal or
State law," while few if any state criminal
provisions include a § 1962. *See id.* Our
presumption that interstate commerce nexuses
are jurisdictional and not substantive elements
of federal criminal statutes, *see Bryant*,

766 F.2d at 375, the "described in" language, and our
interpretive duty to give effect to the "State law" verbiage in
the penultimate sentence all militate against [the petitioner's]
reading of § 1101(a)(43)(J) to require a state racketeering
offense to have an interstate or foreign commerce element to
qualify as an aggravated felony. *Id.* at 538–39. The *Spacek*
court thus held "that [the petitioner's] racketeering conviction
was an aggravated felony and that he was therefore ineligible
for cancellation of removal under § 1229b(a)." *Id.* at 539.

We see no principled distinction between *Castillo-Rivera*
and the cases that have relied on it and the one before us.
Accordingly, the same analysis employed by the courts in
those cases is equally applicable to a categorical comparison
of California Penal Code section 455 and 18 U.S.C. § 844(i),
and, for those same reasons set forth above, Petitioner's
arguments to the contrary are rejected.

We note that this brings us in conflict with one of our
sister circuits. In February of this year, a majority of a three-
judge Third Circuit panel reached a conclusion contrary to
ours. *See Bautista v. Attorney General of the United States*,

744 F.3d 54 (3d Cir. 2014). The majority in that case explicitly rejected the BIA's conclusion that a New York arson statute qualified as an aggravated felony, reasoning that the state statute "lack[ed] the jurisdictional element of § 844(i), which the Supreme Court has found to be a critical and substantive element of that arson offense." *Id.* at 56. In so holding, the majority implicitly rejected the analysis employed by this circuit and the Fifth, Seventh, and Eighth Circuits and concluded that "[i]n some circumstances, the jurisdictional element may be the most meaningful and differentiating element, since it is what distinguishes generic arson from the arson described by § 844(i), thereby evincing Congress's intent in selecting § 844(i) rather than generic arson." *Id.* at 64. Ultimately, relying on the Supreme Court's decision in *Jones v. United States*, 529 U.S. 848 (2000), the *Bautista* majority determined that the jurisdictional hook in § 844(i) is also substantive and thus could not be ignored for purposes of the categorical approach. *Id.* at 66.

We disagree. First, the Supreme Court in *Jones* considered the jurisdictional scope of a federal criminal statute, not whether the jurisdictional hook should be considered for collateral immigration purposes. Second, the Third Circuit's *Bautista* decision is irreconcilable with this Court's determination that Congress intended the term "describe" to be more broad than the term "define." Finally, the *Bautista* decision is in conflict with Congress's intent to provide that foreign as well as state offenses may qualify as aggravated felonies.

At the outset, we find the *Bautista* majority's reliance on *Jones* misplaced. The Supreme Court in *Jones* held that arson of an "owner-occupied residence not used for any commercial purpose [did] not qualify as property 'used in'

commerce or commerce-affecting activity."[6] *Jones*, 529 U.S. at 850–51. However, the Court "focused on interpreting the jurisdictional component of § 844(i) in order to curb Congress' power vis a vis the states and maintain the constitutionality of the federal arson statute." *Bautista*, 744 F.3d at 71 (Ambro, J., dissenting). "*Jones* ruled that the 'interstate commerce' language of § 844(i) was substantive for *the purposes of federal jurisdiction*, and interpreted that language narrowly in order to prevent '[every] building in the land [from falling within] the federal statute's domain.'" *Id.* at 71–72 (quoting *Jones*, 529 U.S. at 849). Judge Ambro's dissent thus properly concludes that *Jones* "does not support the majority's position that the jurisdictional component of § 844(i) is a substantive element of the underlying crime." *Id.* at 72. As the dissent noted, "the holding in *Jones* related to the scope of the Federal criminal statute, not the collateral consequences in an immigration case."[7] *Id.* (quoting *In re Robert Bautista*, 25 I. & N. Dec. 616, at *5 (Oct. 13, 2011)).

---

[6] We pause here to note that, were we to accept Petitioner's argument, it would necessarily follow that state statutes criminalizing arson with respect to commercial property would be deemed aggravated felonies, while those state laws directed at residential property would not. We cannot accept the proposition that states passing criminal statutes, or Congress in drafting the INA, intended to impose harsher immigration consequences for the destruction of commercial property than it did for residential property. We find it absurd, indeed, that one would be removable for attempting to burn a store or factory, but would not be removable for attempting to burn a citizen's home.

[7] Indeed, the penultimate sentence of section 101(a)(43) "can reasonably be read to suggest that Congress intended state crimes that are not punishable under any particular federal statute still to have collateral immigration consequences under the INA." *Id.*

In any event, the *Bautista* majority's reasoning turns on an interpretation of "describe" and "define" that is contrary to the construction given those terms in this circuit. This circuit (as well as the Fifth, Seventh, and Eighth) has explicitly determined that "Congress as a practical matter . . . had to use some *looser* standard such as 'described in[,]' rather than the more precise standard of 'defined in,' if it wanted more than a negligible number of state offenses to count as aggravated felonies." *Castillo-Rivera*, 244 F.3d at 1023 (emphasis added) (internal citations and quotations omitted). The Third Circuit, to the contrary, suggests that the phrase "described in" should be construed more narrowly, to mean that Congress intended only those state laws that would actually be punishable under federal law to be included by that terminology. Since the Third Circuit's analysis turns in large part on its contrary view of "described in," its decision has little force here. Indeed, the dissent in that case makes an argument that is more consistent with this court's jurisprudence, stating that "the phrase 'described in' refers broadly to the *type* of offense. An offense 'described' in § 844(i) includes any offense that involves the substantive elements of arson—the destruction, by means of fire or an explosive, of a building, vehicle, or other real or personal property." *Bautista*, 744 F.3d at 71 (Ambro, J., dissenting).[8]

---

[8] We find additional support for our position in an even more recent Second Circuit case. The Second Circuit was confronted with the same question of whether the New York laws at issue in *Bautista* qualified as aggravated felonies despite the lack of jurisdictional elements in the state provisions. *Torres v. Holder*, ___ F.3d ____, 2014 WL 4085865, *1 (2d Cir. Aug. 20, 2014). Comparing *Castillo-Rivera*, 244 F.3d 1020, and its progeny to the Third Circuit's decision in *Bautista*, 744 F.3d 54, the Second Circuit ultimately concluded that the INA was ambiguous, and it deferred to what it considered the BIA's reasonable interpretation as set forth in the agency decision that was rejected in *Bautista*. *Id.,* at *6 (citing

Finally, the Third Circuit's interpretation would result in virtually no state or foreign laws purportedly "described in" the enumerated federal statutes from categorically qualifying as aggravated offenses.    As Judge Ambro notes, the majority's "reading is in tension with the final phrase of § 101(a)(43), which provides that an offense in violation of foreign law may also be an aggravated felony under the INA." *Id.* at 73. "Congress surely did not envision that foreign laws would include references to interstate commerce." *Id.* Yet, that is precisely what the *Bautista* majority appears to presume in holding that the jurisdictional hook is substantive for collateral immigration purposes as well.    That court's interpretation is contrary to both Congress's expressed intent to qualify state and foreign convictions as aggravated felonies and this circuit's construction of the relevant statutes.    We thus decline to follow it.

## IV

The Petition for Review is **DENIED**.

---

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 456 U.S. 837, (1984)). Despite finding the federal law ambiguous, however, the Second Circuit nonetheless observed that it was inclined to disagree, as do we, with the Third Circuit's construction of "described in" and "defined in," and it too opined that use of the phrase "described in" seemed to indicate that a state statute "need not reproduce the federal jurisdictional element to have immigration consequences." *Id.*, at *4.